Filed:7/27/2023 10:20 AM
Suzy Wright, District Clerk
Wood County, Texas
Reviewed By:Makayla Renee' Holt

CAUSE NO.____2023-419____

| | | |
|---|---|---|
| GALE FARHAT, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | 402ND JUDICIAL DISTRICT |
| | § | |
| SPINNAKER INSURANCE COMPANY, | § | |
| HIPPO INSURANCE SERVICES, KELLEY | § | |
| MABERY, KAREN MACKEY, PATRICIA | § | |
| PENNINGTON, CLAY KIDD, VRC | § | |
| INVESTIGATIONS, LLC, WARDLAW CLAIMS | § | |
| SERVICE, LLC, AND JOSH JONES, | § | |
| | § | |
| DEFENDANTS. | § | WOOD COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff Gale Farhat, ("Farhat"), and files this, her Original Petition against Spinnaker Insurance Company ("Spinnaker"), Hippo Insurance Services ("Hippo"), Kelley Mabery, ("Mabery"), Karen Mackey ("Mackey"), Patricia Pennington ("Pennington"), Clay Kidd ("Kidd"), VRC Investigations, LLC, Wardlaw Claims Service, LLC, and Josh Jones ("Jones")(collectively, "Defendants") and for same, would show unto the Court as follows:

### I.    DISCOVERY

Discovery is intended to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

## II.     PARTIES

Plaintiff Gale Farhat is an individual owning a property at 308 County Road 1297, Yantis, Texas 75497. Plaintiff Farhat's driver's license number is **** and social security number is ***-**-***.

Defendant Spinnaker Insurance Company is an insurance carrier. Spinnaker is a corporation organized pursuant to the laws of the State of Illinois, with its principal place of business at 1 Pluckemin Way, Suite 102, Bedminster, New Jersey 07921. Defendants Spinnaker Insurance may be served with process by service upon its Attorney for Service of Process, Corporation Service Company, CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite, 620, Austin, Texas 78701.

Defendant Hippo Insurance Services is a third party administrator and is a corporation organized pursuant to the laws of Delaware, with its principal place of business at 150 Forest Avenue, Palo Alto, California 94301. Hippo can be served with process by service via the Texas Long-Arm Statute (Texas Civil Practices and Remedies Code Sec. Sec. 17.044) upon the Texas Insurance Commissioner, 1601 Congress Avenue, Austin, Texas 78701.

Defendant Kelley Mabery is an individual and an insurance adjuster who has submitted to the jurisdiction of the State of Texas through licensing by the Texas Department of Insurance. Defendant Mackey's state of residence is Texas. Defendant Mackey's address is 901 Coates Road, Granbury, Texas 76048. Defendant Mackey may be served with process by service at 901 Coates Road, Granbury, Texas 76048, or wherever she may be found.

Defendant Karen Mackey is an individual and an insurance adjuster who has submitted to the jurisdiction of the State of Texas through licensing by the Texas Department of Insurance. Defendant Mackey's state of residence is Texas. Defendant Mackey's address is 1120 Lake Woodland Drive, Little Elm, Texas 75068. Defendant Mackey may be served with process by service at 1120 Lake Woodland Drive, Little Elm, Texas 75068, or wherever she may be found.

Defendant Patricia Pennington is an individual residing and doing business in the State of Texas. Defendant Pennington may be served with process at 1104 Dallas Drive, #220, Denton, Texas 76205, or wherever she may be found.

Defendant Clay Kidd is an individual residing and doing business in the State of Texas. Defendant Jones may be served with process at 9467 Farm Road 1448, Winnsboro, Texas 75494, or wherever he may be found.

Defendant VRC Investigations, LLC, upon information and belief, is a Texas Limited Liability Company and located at: 1104 Dallas Drive, Suite 220, Denton, Texas 76205, and can be served with process by registered agent at 1104 Dallas Drive, Suite 220, Denton, Texas 76205.

Defendant Wardlaw Claims Service, LLC, upon information and belief, is a Texas Limited Liability Company and located at: P.O. Box 7817, Waco, Texas 76714, and can be served with process upon its registered agent, William F. Wardlaw, at 2725 Texas Central Parkway, Waco, Texas 76712.

Defendant Josh Jones is an individual residing and doing business in the State of Texas. Defendant Jones may be served with process at 1120 Lake Woodland Drive, Little Elm, Texas 75068, or wherever he may be found.

### III.   JURISDICTION AND VENUE

Venue is proper in Wood County, Texas, pursuant to Section 15.032 of the Texas Civil Practice and Remedies Code, because all or a substantial part of the events or omissions giving rise to the claim occurred in Wood County, Texas. The damages sought are within the jurisdictional limits of this Court.

The Court has jurisdiction over Defendants because Defendant is an insurance company, or acting on behalf of an insurance company, that engages in the business of insurance in the State of Texas.   Plaintiff's causes of action arise out of these Defendants' business activities in the State of Texas.

### IV.   FACTS

Plaintiff Farhat is, and at all times mentioned and material to this action was, the owner in fee of certain real property commonly known as 308 County Road 1297, Yantis, Texas 75497 ("the Farhat Property").

Plaintiff would respectfully show that she obtained a policy of insurance with Spinnaker.  The insurance policy is Policy No. HTX-1023079-03 (the "Policy"). The Policy between Farhat and Spinnaker provided coverage for potential water damage.

After the death of her mother on August 27, 2020, the ownership of the Farhat Property transferred to Plaintiff Farhat. At the time of the loss, the Farhat Property was listed for sale and occupied by Ms. Farhat, although she was out of state visiting her daughter.

On December 18, 2022, Ms. Farhat contacted Tamara Clark of Promise Land Realty, her real estate broker, asked her to turn off water at the meter, to drip the faucets in the home, and turn up the heat due to the prediction of freezing temperatures.

Ms. Clark confirmed that she went to the Farhat Property, turned off the water at the meter, turned up the heat, but forgot to drip the faucets.

The Farhat Property was shown to a prospective buyer on the morning of December 20, 2022, by another real estate agent.

Also on December 20, 2022, Ms. Farhat communicated with Heather Steinnoff, who was hired to watch over the Farhat Property, periodically freshen it up, and pay the yard company.  Ms. Steinnoff informed Ms. Farhat that she had spoken to Ms. Clark earlier that day and Ms. Clark again confirmed turning off the water that day. However, as it turns out, the water meter was already off, so Ms. Clark ended up turning the water on at the water meter without realizing it.

As predicted, the temperature fell into the single digits in the area, from December 22, 2022, to December 25, 2022.  On December 26, 2022, Tim Trimble, a neighbor of Ms. Farhat, left her a voicemail message at 2:46 pm informing her that he observed water flowing out of her house and down her driveway.

Ms. Farhat listened to Mr. Trimble's voicemail message at 4:30 pm that same day. She immediately contacted Ms. Clark. Ms. Clark and her husband immediately went to the Farhat Property and turned the water off at the meter. It was at this point that Ms. Clark realized that the water had been off already at the meter when she went to turn the

water off, and in fact she must have turned the water on, instead of off by mistake, on December 20, 2022.

With the water now in fact turned off at the water meter, it being a holiday weekend, and Ms. Farhat being out of town, nothing further occurred until December 27, 2022, when the claim was reported to Mary Lou Castneda of Hippo. Ms. Castneda's instruction to Ms. Farhat was to contact a restoration company. Ms. Clark (on behalf of Ms. Farhat) then called Birds Restoration in Quitman, Texas.

On the morning of December 28, 2022, Birds Restoration arrived at the Farhat Property and began vacuuming up the water. However, by 4:00 pm, it seemed that the effort was futile, as water was already soaking back into the home. Ms. Steinnoff was there taking pictures of the damage. Birds Restoration turned out not to be equipped to handle this project.

A second restoration company, 1st Call Restoration Company in Tyler, Texas, was contacted and was scheduled to go to the Farhat Property on December 29, 2023, to assess the damage.

On December 29, 2022, 1st Call Restoration began the required remediation process. On that same day, Ms. Castneda assigned the claim to Karen Mackey of Hippo. Ms. Farhat was also informed that the assigned adjuster, Ms. Mackey, was out of town for the next week, and Kelley Mabery, Ms. Mackey's supervisor, would handle the claim in Ms. Mackey's absence. Ms. Mabery informed Ms. Farhat that Clay Kidd of Wardlaw Claims Service, LLC, would be the field adjuster. Ms. Farhat explained to Ms. Mabery the

history of hiring a restoration company and that 1st Call Restoration had started remediation as authorized by Ms. Castneda on December 27, 2022.

On December 31, 2022, Clay Kidd contacted Ms. Farhat, at which time Ms. Farhat informed Mr. Kidd that the only work completed to date on the home at the time of their call, was 1st Call Restoration's work to vacuum the water out of the carpet. Dehumidifiers had not yet been set, but would be on January 2, 2023. Ms. Farhat also informed Mr. Kidd that 1st Call Restoration would begin its additional and required mitigation processes on January 10, 2023; being its first available date to do so. Mr. Kidd was also informed that Bannister Plumbing had been scheduled to determine the source of the water leak. He was told that Bannister Plumbing would charge a trip charge of $209 for its initial visit. Mr. Kidd confirmed that he would visit the Farhat Property on January 10, 2023.

Ms. Farhat had not received any communication from Ms. Clark since December 22, 2023, so Ms. Farhat called to let her know the status.

On January 4, 2023, Bryan Miller ("Mr. Miller") with 1st Call Restoration began psychometric readings at the Farhat Property.

Ms. Farhat initially had to handle her claim remotely while out of state visiting her daughter and while having surgery. Ms. Farhat was released by her physician to travel back home on January 5, 2023. Ms. Farhat returned to Texas on January 5, 2023, although she still had physical therapy appointments to attend to fully recover from her surgery.

Because her home was uninhabitable, on January 5, 2023, Ms. Farhat entered into a temporary lease agreement for a room in Longview, Texas. This location is

approximately an hour from her home, but was convenient to her physical therapist. The cost of the room is $89 per day or $2759 per month.

On January 6, 2023, Mr. Kidd called to confirm the meeting set for January 10, 2023. During that call Mr. Kidd and Ms. Farhat discussed why the water was on at the Farhat Property on the date of loss, the fact that Ms. Farhat was out of state for the holidays on the date of loss, Ms. Farhat's need for surgery, and the impact on her travel plans. On January 6, 2023, Ms. Farhat also signed a work authorization for 1st Call Restoration to perform required mitigation services.

On January 10, 2023, Ms. Farhat met with Mr. Kidd, the field adjuster assigned to Ms. Farhat's claim from her carrier, and with representatives of 1st Call Restoration and Bannister Plumbing at the Farhat Property. Bannister Plumbing inspected and found that a ¾ cpvc waterline in the attic had burst due to the freezing temperatures. Bannister Plumbing removed and replaced the bad section of the cpvc pipe and restored water service to the Farhat Property. There were no additional plumbing leaks found at that time. Bannister Plumbing also inspected the water heaters to ensure they were not damaged. After Bannister Plumbing completed its inspection, it recommended upgrades to the home based on the cpvc pipes in the home. Ms. Farhat did not authorize any further repairs, stating she wanted to see what her insurance was going to recommend.

Mr. Kidd personally informed Ms. Farhat that things were "looking good" and that he authorized 1st Call Restoration to proceed with the demolition/mitigation process. Ms. Farhat paid Bannister Plumbing its $209 trip charge for its initial visit. Ms. Farhat also

placed a call to Ms. Mackey, the carrier-assigned inside/desk adjuster, and left her a voice mail message.

On January 11, 2023, Ms. Mackey returned Ms. Farhat's call and left her a voice mail message. In that voice mail message, Ms. Mackey requested a copy of the Bannister Plumbing report and documentation for Ms. Farhat's temporary room rental.

Although Bannister Plumbing had previously provided a copy of its report directly to Ms. Mackey, Ms. Farhat provided another copy along with her lease agreement and receipts for food.

On January 16, 2023, Ms. Farhat spoke with Mr. Miller, the supervisor at 1st Call Restoration to inquire about the schedule for the week.  Mr. Miller replied that 1st Call Restoration was finishing up with the demolition and would return on January 20, 2023, to set up drying equipment. Neither 1st Call Restoration nor Ms. Farhat had received Mr. Kidd's report at this point.

Also on January 16, 2023, Ms. Mackey informed Ms. Farhat that she did not need to save food receipts in that her policy did not allow coverage for food expenses because she had access to a kitchen. Ms. Farhat informed Ms. Mackey that there is no kitchen in her rented room and requested that the food reimbursement be reconsidered.

On January 18, 2023, Mr. Miller with 1st Call Restoration stated that the psychometric readings were still high in some areas and he would send his report to the adjuster on January 19, 2023.

On January 21, 2023, Ms. Mackey sent correspondence stating her investigation was still pending.

On January 25, 2023, 1st Call Restoration sent its mitigation estimate in the amount of $73,536.64 plus tax to Ms. Mackey.

On January 26, 2023, Ms. Farhat asked for confirmation from Ms. Mackey that she had received the five emails sent, which included Bannister Plumbing's bill, Ms. Farhat's past water bills, the temporary room rental agreement, and her food costs she had incurred to date. Ms. Farhat noted to Ms. Mackey that 1st Call Restoration had sent its invoice directly to Ms. Mackey.  Ms. Farhat asked Ms. Mackey what the next step was and how long the process would take. At this point in time, the restoration work at the house was at a standstill until 1st Call Restoration received payment for the mitigation services it had provided up to January 26, 2023.

On January 28, 2023, Ms. Farhat sent communication to Ms. Mackey, stating she was again sending Ms. Mackey a copy of the receipt incurred for the $209.00 she paid to Bannister Plumbing, copies of her water bills for the past twelve months, a copy of her temporary room lease agreement, which began on January 6, 2023, and copies of the food receipts she had incurred to date, and asked what Ms. Mackey's decision was at this point in regards to her reconsideration for food/meal reimbursement. Ms. Farhat informed Ms. Mackey that 1st Call Restoration would be sending its report and bill within the next two days. Ms. Farhat also asked Ms. Mackey to provide her with a copy of Mr. Kidd's report.

Also on January 28, 2023, Ms. Farhat asked Mr. Miller, with 1st Call Restoration, to confirm that the heat was turned on at the Farhat Property. On that same date, Bryan Miller replied "Yes. - 9:26 am," and informed Ms. Farhat that they had turned up the heat and set it to 60 degrees due to the upcoming weather.

On January 30, 2023, Ms. Farhat communicated to Mr. Miller at 1st Call Restoration to confirm that the water meter was off at the Farhat Property. Bryan Miller then made a special trip to the Farhat Property to confirm that in fact the water was off.

On February 1, 2023, 1st Call Restoration revised its estimate to $60,148.41. On that same date, Ms. Farhat provided electric bills for the past several months to Ms. Mackey.

On February 2, 2023, Ms. Farhat tried to contact Ms. Mackey to inquire as to when her Additional Living Expense coverage for her temporary room rental would be released.

Agents acting on behalf of Hippo visited Ms. Farhat's next door neighbors, Cindy and Craig Schoultz, at 9:00 pm.  Mr. Schoultz informed Ms. Farhat that it was obvious to him that said agents/representatives were fishing for information  regarding Ms. Farhat. Mr. Schoultz confirmed to the agents/representatives of Hippo that Ms. Farhat did in fact reside at the Farhat Property, and that she had been out of state visiting her daughter.

On February 6, 2023, Ms. Mackey sent a letter to Ms. Farhat denying the claim, stating that inadequate heat was the cause of the burst pipe. Clearly, Ms. Mackey did not thoroughly review or give proper credence to the materials, photographs, and reports provided to her. Specifically, the January 10, 2023, report of Bannister Plumbing, which stated:

> We arrived on-site customer-stated they were out of town and when they
> arrived home a pipe had busted during the freeze causing it to flood the
> whole house. During investigation we found a 3/4 cpvc waterline in attic was
> busted. We removed and replaced bad section of pipe and turned water on,
> no other leaks found at this time. Inspected water heaters and they are in
> good shape. See work suggested for recommendations.

No matter what the temperature was in the house on the date of loss, Ms. Farhat's

attic is not a climate-controlled space. This is evidence of Defendants' outcome-oriented

investigation.

On February 10, 2023, Ms. Clark, the real estate broker, told Ms. Farhat that

agents/representatives with Hippo were reaching out to her.

On February 16, 2023, Ms. Farhat met with Tim Lilly, President of 1st Call

Restoration. Ms. Farhat provided pictures of the damage, documents showing ownership

of the home, along with past water and electrical bills to Mr. Lilly, who then sent those

(again) to Ms. Mackey via email. Also, Ms. Farhat provided to Ms. Mackey a photograph

of the second-floor thermostat, which was taken December 28, 2022, by Ms. Steinhoff

showing that the heat was set at 50 degrees in the Farhat Property.

On February 17, 2023, Ms. Mackey left a voice mail message stating that the claim

was still under review.

On February 27, 2023, a full 60 days after the loss, Ms. Farhat sent a message to

Ms. Mackey asking when the claim would be resolved.

On the same date of February 27, 2023, Ms. Farhat contacted Ms. Clark to let her

know that investigators were trying to get in touch with her. Ms. Clark replied that she

would reach out to them again on February 28, 2023. Ms. Clark also noted that she had tried many times before to respond and was only able to leave a voicemail.

On February 27, 2023, Ms. Mackey sent a reservation of rights letter, which stated that an investigation of the loss was underway to "determine the cause of origin and to obtain any information that may arise therefrom." As the content of Ms. Mackey's letter was contrary to previous communication Ms. Farhat had received from Ms. Mackey, Ms. Farhat contacted Mr. Lilly from 1st Call Restoration for guidance.

Ms. Clark stated she called the investigator again on February 28, 2023, but again was only able to leave a voice message.

On March 16, 2023, Ms. Farhat asked Ms. Clark if she had spoken to representatives with Spinnaker or Hippo. Ms. Clark stated that she had made multiple attempts to contact them with no return call. A lady named Patricia, who appears to be Ms. Patricia Pennington with VRC Investigations, sent Ms. Clark an email with a few questions. On March 15, 2023, Ms. Clark replied to Ms. Pennington's inquiries as to: 1. Was the home occupied; 2. If there were tenants at the Farhat Property; 3. Did Ms. Clark have any invoices for repairs; and 4. On what date was the Farhat Property listed for sale.

· On March 17, 2023, Ms. Farhat made a complaint with the Texas Department of Insurance about the handling of her claim.

On March 28, 2023, being at a loss as to how to move forward with her insurance claim, Ms. Farhat enquired of Mr. Lilly with 1st Call Restoration how he thought she should proceed. Mr. Lilly suggested obtaining the services of a public adjuster. Mr. Lilly referred Ms. Farhat to My-Adjuster, LLC.

On March 28, 2023, at 1:19 pm, John King received an email from Ms. Farhat stating her wishes to proceed with Mr. King of My-Adjuster, LLC.; and to provide her with a contract to retain representation from My-Adjuster, LLC.

On March 30, 2023, Mr. King of My-Adjuster, LLC, received the completed and signed contract from Ms. Farhat.

On March 31, 2023, at 10:33 am, Mr. King emailed Ms. Mackey a detailed comment letter, formally requesting copies of information and associated documentation from Defendant's file regarding Ms. Farhat's claim (Claim No.  HOM-0023985).

On March 31, 2023, at 3:55 am, Ms. Mackey responded to Mr. King, stating:

> Good afternoon,
> Your email request has been received. Please contact the SIU Specialist assigned to this claim Josh Jones (855) 999-9746 ext. 7230 for claim information.
>
> Kind Regards,
> Karen Mackey
> Hippo Insurance
> (855)999-9746ext.7171
> kmackey-c@hippo.com

On April 3, 2023, at 11:09 am, Mr. King received a call from Josh Jones.  Mr. Jones immediately came on "strong," demanding to know how Mr. King of My-Adjuster, LLC, had become involved with Ms. Farhat's claim. Mr. King asked Mr. Jones if he could hold a moment at which time Mr. King put the call on speaker and included David Hastings (also of My-Adjuster, LLC). Once Mr. Hastings was introduced, Mr. Jones continued with his "strong" tone inquiring how My-Adjuster, LLC, became involved with Ms. Farhat's claim.

Mr. Jones informed both Mr. King and Mr. Hastings that it was his belief, based upon his research, that not only was Ms. Farhat "guilty" of not maintaining adequate heat at the Farhat Property, but that based upon the title research he had conducted, he did not even believe that she owned legal title to the Farhat Property at all. To back up his assertion that Ms. Farhat did not hold legal ownership to the Farhat Property, Mr. Jones provided an example of an individual that he claimed kept arising under his chain of title search and that he could not trace Ms. Farhat into or out of that chain of title.

On the same date, April 3, 2023, Mr. King then took the example Mr. Jones had provided and began researching the Real Property Records of Wood County, Texas, for title records concerning the Farhat Property. By the afternoon of April 4, 2023, Mr. King had obtained sufficient documentation of plats, deeds, etc., filed of legal record in the Real Property Records of Wood County, Texas, to prove Ms. Farhat's ownership of the Farhat Property.

On April 4, 2023, at 4:39 pm, Mr. King emailed his findings and supporting documents (e.g., plats, deeds, etc.) recorded of legal record in the Real Property Records of Wood County, Texas, which proved Ms. Farhat's legal title ownership of the Farhat Property at 308 CR 1297, Yantis, Texas 75497 -- AKA: Lot 3 TimberWood Subdivision, Wood County, Texas. Mr. King also provided his comment letter, dated April 4, 2023, to Ms. Mackey, Ms. Mabery, Ms. Pennington, and Mr. Jones.

On the morning of April 5, 2023, Mr. King concluded that Mr. Jones had been inaccurately chasing the chain of title for 288 CR 1297, Yantis, Texas, AKA: Lot 3,

TimberWood North in Wood County,_Texas, and not-that of the Farhat Property: 308 CR

1297, Yantis, Texas, 75497 – AKA: Lot 3 TimberWood Subdivision, Wood County, Texas.

On April 5, 2021, at 2:19 pm, and again on April 6, 2021, at 10:43 am, Mr. King

emailed Mr. Jones documentation supporting Mr. Jones' inaccurate research and

documenting Mr. Jones' blatant failure to accurately identify the property that he was

assigned to "investigate;" which had inexcusably caused a two month delay in the

adjusting of the Ms. Farhat's claim.   Receiving no response, Mr. King followed up his

email communications with a telephone call to Mr. Jones.

On April 6, 2023, at 11:46 am, Mr. Jones emailed a response to Mr. King stating:

> Hello Mr. King,
> You provided a chain of titles and associated real estate documents filed of
> public record from Nov. 20, 1982, through to July 14, 2017. The certificate
> of death for Aliya Kimble is dated August 27, 2020.
>
> Our search results indicate that after July 14, 2017, a General
> Warranty Deed was filed on October 23, 2020, granting ownership to
> Michael and Elizabeth Clarno. A Warranty Deed was filed on December 28,
> 2022, with Michael and Elizabeth Clarno granting ownership to John and
> Tammy Welch.
>
> We need a copy of a deed or probated Will to indicate Gale Farhat
> is the owner of the property after the death of Aliya Kimble in 2020. An in-
> person recorded statement is also needed for the facts surrounding the loss.
> Also, we need a copy of a 2020 deed filed with the Wood County clerk with
> Gale Farhat's name and/or a copy of the probated Will indicating that Gale
> Farhat is the owner of the said property.
> Thanks

On April 6, 2023, at 2:51 pm, Mr. King replied to Mr. Jones  and detailed again the

blatant inability to accurately identify the covered Farhat Property, the fact that Mr. Jones

had been provided multiple times supporting documentation that not only did Ms. Farhat

in fact maintain sufficient heat within the dwelling, but that the source/origin of the loss

occurred in the attic (which is not temperature controlled as is the dwelling interior); and

that Hippo's own (SIU) investigation unit had conducted inaccurate "research" of the title

associated with the Farhat Property.

On April 7, 2023, at 12:42 pm, Mr. King emailed a comment letter to Mr. Jones,

Ms. Mackey, and Ms. Mabery, stating the following:

Mr. Jones, and/or whom it may concern,
Find KSLA News 12 Report documenting Wood County, Texas. County
wide power outage for Dec. 22, 2023, addressed below. Once reviewed,
please provide any documentation you/Hippo may have to date, which
disputes documented outage.

Be Advised: My-Adjuster, LLC. again, formally requests the immediate
release to us of all copies of any documentation related to the mutual client's
subject claim, including but not limited to:

All photo/sketch/3-D imaging and/or moisture reports, all CRM system-
based communications and or standard emails, voice, or video recordings.
All direct contact information for all Hippo engaged employees or
representatives, which have been assigned or engaged since the DOL.
Any utility provider documentation obtained by Hippo or that it received from
the mutual client.

All subject policy premium payment history made to Hippo, from 2017 to
current date of this correspondence.

That Hippo or any representative thereof, has ever sent to or received from
our mutual client at any point in history since the subject claim was filed to
the date of this correspondence.

BE ADVISED: Again, due to Hippo's blatant documented inability to
accurately identify its own subject policy covered property and the fact, that
it has been provided supporting documentation to dispute its claim of
"failure" to maintain heat/electricity by the insured. We formally request that
Hippo Insurance immediately conclude all (SIU) or related investigations
and immediately extend coverage.
Contact me directly, should you have any questions.

Respectfully,
John King
My-Adjuster, LLC.

P: (817) 863-3053
E: jdking@my-adjuster.com
A: 200 E. Beltline Rd. Ste 104, Coppell, TX. 75019
TX 2043574, 2623040

On April 8, 2023, 1st Call Restoration filed a lien on the Farhat Property.

On April 9, 2023, at 2:13 pm, Mr. King emailed Ms. Mackey, Ms. Mabery, Ms. Pennington, Mr. Jones, and Mr. Davis (Mr. Jones' manager) formal requests for specific claim-associated information and documentation.

On April 10, 2023, at 8:18 pm, Ms. Mackey responded:

Good morning,

Resending the prior email with attachments. I have attached all letters sent to Ms. Farhat, regarding this claim. Ms. Farhat, can provide you with the documents that she has submitted to Hippo. All other documents requested are considered work products. As a result, I will not be able to provide you with those documents.

Kind Regards,
Karen Mackey
Hippo Insurance
(855) 999-9746 ext 7171
Kmackey-c@hippo.com"

It is noted that none of the people to whom Mr. King directed his request are attorneys, and the requested information is not protected by the legal privilege of any work product doctrine. This is further evidence of all Defendants' obstructionist tactics, outcome-oriented investigation, and unwillingness to aid its insured.

On April 12, 2023, at 12:19 pm, Mr. King, again emailed Ms. Mackey, Ms. Mabery, Ms. Pennington, Mr. Jones, and Mr. Davis a comment letter dated April 11, 2023, and

detailing Spinnaker's own notice of Consumer Bill of Rights (as made part of its own

Policy) as follows:

> To whom it may concern,
> Be advised, copied from Hippo's own policy provided our firm in email on April 04, 2023, at 9:01am and provided below.
> 28 TAC Section 5.9971(b) CONSUMER BILL OF RIGHTS Homeowners, Dwelling, and Renters Insurance
>
> What is the Bill of Rights?
> It is a basic outline of important rights you have under Texas law. Insurance companies must give you this Bill of Rights with your policy. It is important to read and understand your policy.
>
> What You Should Know When You File a Claim
> 5. Deadlines for processing claims and payments. You should file your claim with your insurance company as soon as possible. When you file a claim on your own policy, the insurance company must meet these deadlines:
> Within 15 days after you file a claim: The company must let you know they received your claim.
>
> The company must also start their investigation and ask you for any other information they need. Within 15 business days after they get all the information they need: The company must approve or deny your claim in writing. They can extend this deadline up to 45 days from the date they: (a) let you know they need more time and (b) tell you why.
> Within 5 business days after they let you know your claim is approved: The company must pay the claim.
>
> Note: TDI can extend these deadlines by 15 more days if there is a weather-related catastrophe. If your company fails to meet these deadlines, you may be able to collect the claim amount, interest, and attorney's fees.
>
> 6. Written explanation of claim denial. Your insurance company must tell you in writing why your claim or part of your claim was denied.
>
> 7. Reasonable investigation. Your insurance company cannot refuse to pay your claim without a reasonable investigation of the claim. You should keep records of all claim communications (including notes from phone calls) and other claim documentation (including damage estimates and receipts).
>
> 8. Information not required for processing your claim. Your insurance company can only ask for information reasonably needed for their claim investigation. However, they cannot ask for your federal income tax returns

unless: (a) they get a court order or (b) your claim involves a fire loss, loss of profits, or lost income.

BE ADVISED: Given the fact, that due to Hippo's blatant and documented inability to accurately identify its own subject policy covered property, of which the correct and valid chain of title therefore is documented and filed of record in the Real Property Records of the County Clerk's Office of Wood County, TX.,

Also given that fact, that Hippo has as of the date of this correspondence, has been provided local news coverage, that Wood County, TX. experienced a County wide power outage beginning on Dec. 22, 2022, and has also been provided photographic evidence, that the subject property covered by the subject policy at the center of the insureds subject claim, did in fact have the heat set at a sufficient temperature before, on and during the above said Winter storm event.

My-Adjuster, LLC. again formally requests, that Hippo Insurance immediately conclude all (SIU) or other related investigations and immediately extend coverage.
Respectfully,

Contact me directly, should you have any questions.
Respectfully, John King - My-Adjuster, LLC. - P: (817) 863-3053 E: jdking@my-adjuster.com - A: 200 E. Beltline Rd. Ste 104, Coppell, TX. 75019 - TX 2043574, 2623040

On April 13, 2023, at 3:19 pm, Mr. King received an email from Ms. Mabery requesting the following:

Are you available to speak regarding the claim now.
Kelley Mabery
Hippo Insurance Services
PO Box 909 Austin, TX 78767-7195
kmabery-c@hippo.com

On April 13, 2023, at 3:22 pm, Mr. King responded to Ms. Mabery's email as follows:

Yes, please call me at your convenience.
Respectfully,

On April 13, 2023, at 3:23 pm, Ms. Mabery responded to Mr. King as follows:

At the office or mobile number is the best way to reach you
Kelley Mabery
Hippo Insurance Services
PO Box 909 Austin, TX 78767-7195
kmabery-c@hippo.com

On April 13, 2023, at 3:25 pm, Mr. King responded to Ms. Mabery as follows:

(817) 863-3053.

On April 13, 2023, at 3:31 pm, Ms. Mabery responded to Mr. King as follows:

Give me 10 mins finishing up with another Insured and will be calling you.

Kelley Mabery
Hippo Insurance Services
PO Box 909 Austin, TX 78767-7195
kmabery-c@hippo.com

On April 13, 2023, around 3:40 – 3:45 pm, Mr. King received a telephone call from Ms. Mabery.  Ms. Mabery verbally informed Mr. King that Ms. Farhat's claim was denied due to failure to maintain adequate heat in her property.

On April 13, 2023, at 3:48 pm, Ms. Mabery emailed Mr. King and Ms. Farhat a denial letter, dated April 11, 2023, stating the following:

April 11, 2023
Aliya Kimble, Gale Farhat
308 County Rd. 1297, Yantis, TX 75497
Re: Policy Number: HTX-1023079-03
Claim Number: HOM-0023985
Date of Loss: 12/23/2022

Dear Aliya Kimble and Gale Farhat,
We have concluded our investigation and evaluation of the above-captioned claim and loss regarding Hippo Insurance Services on behalf of Spinnaker

Insurance Company policy HTX-1023079-03 with effective dates 08/21/2022- 08/21/2023. The loss was reported on 12/27/2022 as a freeze claim.

We've completed an inspection of your property. Our inspection revealed freezing temperatures in the home caused a water line located in the attic to freeze and burst, causing water damage to the property. Our investigation concluded the property was vacant and did not maintain heat per the provided utility bills. The policy specifically excludes damage resulting from freezing temperatures to the plumbing if heat is not maintained in the property. As such, there is no coverage for this loss under the above policy.

Ms. Mackey's denial letter stated that the water line that had burst was located in the attic. As the Defendants are well aware, the attic is an area that is not climate-controlled in the vast majority of insured homes.  Further, contrary to all evidence provided, the home was not vacant at the time of the freeze. Instead, Ms. Farhat was simply out of town visiting her daughter for the holidays, which is not an uncommon occurrence.  As is evidenced by the steps taken by Ms. Farhat, the heat was in fact turned on in her home because she was concerned about the predicted freezing weather. This is further evidence of the outcome-oriented investigation conducted by all Defendants.

On March 31, 2023, Mr. King provided an estimate to repair all the damage to the Farhat Property in the amount of $571,132.24.

Ms. Farhat sought property damage benefits under the Policy, which Defendants have refused to pay.  Rather than properly pay the insurance benefits to which Ms. Farhat is entitled to receive under the Policy, Defendants have attempted to circumnavigate their obligation without reasonable basis to timely pay the insurance benefits owed Ms. Farhat under the Policy.  As a result of this failure to pay policy benefits, Ms. Farhat has incurred significant financial loss.

Unfortunately, the Defendants' delay and imposition of mental anguish and severe economic distress has had reasonably anticipated consequences on Ms. Farhat, from which she is struggling to recover.  Given the repeated denial of payment for necessary property damage benefits, Ms. Farhat has been subject to significant economic impact and continuing economic damage.  The significant effect of Spinnaker's wrongful and unjustified delay, however, is still uncompensated.

As detailed in the above paragraphs, Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants did not properly pay Plaintiff's claim and did not provide full coverage for the damages sustained by the Plaintiff.  Additionally, Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants continue to delay the payment of the damages to the Farhat Property.  As such, Plaintiff has not been paid for damages to her property.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to perform their contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, they refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff.  Hippo and Spinnaker are in breach of the insurance contract between Hippo and Spinnaker and

Plaintiff.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants misrepresented to Plaintiff that the damage to the Farhat Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(1).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy.  Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants committed conduct which constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(2)(A).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to explain to Plaintiff the reasons for their denial of Plaintiff's claim. Specifically, Defendants Spinnaker, Hippo, and their

agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's claim.  Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants committed conduct which is a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(3).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to affirm or deny coverage of Plaintiff's claim within a reasonable time.  Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants. Such conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(4).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery,

Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants refused to fully compensate Plaintiff under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. Specifically, Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on her property. The conduct of Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(7).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, by beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.055.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery,

Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to accept or deny Plaintiff's full and entire claim within statutorily mandated time of receiving all necessary information. Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.056.

Defendant Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to meet their obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, Defendants have delayed full payment of Plaintiff's claim longer than allowed and to date. Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.058.

From and after the time Plaintiff's claim was presented to Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants, the liability of Spinnaker and Hippo to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants

have refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes a breach of the common law of good faith and fair dealing.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

As a result of Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who are representing her with respect to these causes of action.

As a result of the foregoing conduct, Plaintiff would respectfully show as follows:

## V.    CAUSES OF ACTION

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants are liable to Plaintiff for fraud, intentional breach of contract, as well as intentional violations of the Texas Insurance Code and intentional breach of good faith and fair dealing.

## A. FRAUD

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants are liable to Plaintiff for common law fraud.

Each and every one of the representations as described above concerned material facts for the reason Plaintiff would not have acted and in which Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants knew were false or made recklessly without any knowledge of their truth as a positive assertion.

The statements were made with the intention that they should be acted upon by Plaintiff, who in turn acted in reliance upon the statements thereby causing Plaintiff to suffer injury and constituting common law fraud.

## B. BREACH OF CONTRACT

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants have committed acts which constitute a breach of the insurance contract made between Spinnaker Insurance and Hippo and Plaintiff.

The failure and refusal of Defendants, as-described above, to pay the adequate compensation as they are obligated to do under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of Defendants Spinnaker and Hippo's insurance contract with Plaintiff. Defendants have failed to comply with their

contractual obligations to Plaintiff and are in breach of contract.

Pleading further, Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd  VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants induced Plaintiff to enter into a contract with the intent of denying benefits in the event a claim was made.

### C. NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices, Texas Insurance Code §541.060(A). All violations under this article are made actionable by Tex. Ins. Code §541.151.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' unfair settlement practice as described above, misrepresented to Plaintiff material facts relating to the coverage at issue which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(1).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' unfair settlement practice, as described above, failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendants Spinnaker and Hippo's liability under the Policy was

reasonably clear which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(2)(A).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' unfair settlement practice, as described above, failed to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for their offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(3).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' unfair settlement practice, as described above, failed within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(4).

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service; LLC, and Jones, and other agents and adjusters of the Defendants' unfair settlement practice, as described above, refused to pay Plaintiff's claim without conducting a reasonable investigation which constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(7).

### D. NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by Tex. Ins. Code §542.060.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that they reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of the Texas Insurance Code §542.055.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints. Such failure constitutes a non-prompt payment of the claim. Tex. Ins. Code §542.056.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants delayed the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for as described above. Such delay

constitutes a non-prompt payment of the claim. Tex. Ins. Code §542.058.

Defendants violated these and other provisions of the Texas Insurance Code by commission of the acts complained of herein. Defendants have a pattern and practice of violating the Texas Insurance Code through the commission of the conduct described herein. Defendants have made institutional decisions to promote profits rather than paying legitimate claims like Plaintiff's claims.

### E.  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

The actions of Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants constitute a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants failed to adequately and reasonably investigate and evaluate Plaintiff's claim, although at that time Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. Such conduct constitutes a breach of the duty of good faith and fair dealing.

Defendants failed to afford equal consideration to the rights of Plaintiff as compared to itself.

Defendants acted unreasonably in the processing, investigation, and denial of Plaintiff's claim. Defendants' conduct was knowing and intentional.

There was no reasonable basis for denial of Plaintiff's claim, delay in payment to Plaintiff, and failure to investigate. Defendants had actual knowledge of the unreasonable nature of their conduct and have forced Plaintiff to pursue litigation to recover the benefits to which she is due.

## F.  VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES/CONSUMER PROTECTION ACT

Based on the facts previously set forth, Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants have committed violations of the Texas Deceptive Trade Practices/Consumer Protection Act, ("DTPA"). The DTPA, Sections 17.46, *et seq.* of the Texas Business and Commerce Code, provides additional protection to consumers who are victim of deceptive, improper, and/or illegal practices, including the award of treble damages for knowing violation and attorneys' fees.  Defendants' conduct in engaging in such acts or practices results in actual and consequential damages to Plaintiff and supports an award for treble damages.

Plaintiff would respectfully show that she is entitled to actual damages resulting from these violations of the law.  These damages include the sums the Defendants have wrongfully refused to pay and any consequential damages to Plaintiff's economic welfare in the future, including any exacerbation of economic condition occasioned by the delay in payment of these claims. Plaintiff is also entitled to recovery of treble damages for "knowing" violations.

In addition, Plaintiff is entitled to recovery of attorneys' fees necessary to afford its

rights, along with the costs and expenses set forth by law.

## G. KNOWLEDGE

Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and Texas Deceptive Trade Practices Act and were a producing cause of Plaintiff's damages described herein.

Plaintiff has complied with all conditions precedent in making her claims against Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants. Plaintiff has complied with all conditions precedent to bring this litigation.

To the extent any individual or entity took part in the investigation, processing, adjusting, delaying, and denial of Plaintiff's claims, each did so while within the scope of their agency and employment of Defendants.

## H. PATTERN AND PRACTICE OF COMMON LAW AND STATUTORY VIOLATIONS

Plaintiff would show that Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants engaged in a pattern and practice of conducting outcome-oriented investigations, hiring biased "inspectors," and routinely failing to pay the full value of the claim. Defendants undertake these actions in an attempt to withhold monies they know, or should know, is reasonably payable and due under the terms of the Policy.

## VI.    DAMAGES

Plaintiff would show that all of the aforementioned acts, taken together or

singularly, constitute the producing causes of the damages sustained by Plaintiff.

As previously mentioned, the damages caused by this water leak rendered the Farhat Property significantly damaged and uninhabitable. These damages have not been properly addressed or repaired in the months since the water damage causing further damages to the Farhat Property and causing undue hardship, burden and mental anguish to the Plaintiff. These damages are a direct result of Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' mishandling of Plaintiff's claim in violation of the law set forth above.

For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of its claim together with attorney's fees. Plaintiff seeks actual damages in the amount of $571,132.24.

For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, court costs, and attorneys' fees. For knowing conduct of the acts complained of, Plaintiff request for three times its actual damages. Tex. Ins. Code §541.152. Plaintiff seeks monetary relief over $1,000,000.

For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of its claim, as well as eighteen (18) percent interest per annum of the amount of such claim as damages, together with attorneys' fees. Tex. Ins. Code §542.060. Plaintiff seeks monetary relief over $1,000,000.

For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurance breach

of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, mental anguish, exemplary damages, and damages for emotional distress. Plaintiff seeks monetary relief over $1,000,000.

Additionally, for breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendants Spinnaker, Hippo, and their agents and adjusters, including Mabery, Mackey, Pennington, Kidd, VRC Investigations, Wardlaw Service, LLC, and Jones, and other agents and adjusters of the Defendants' conduct in hindering the reconstruction of the Farhat Property. Plaintiff seeks monetary relief over $1,000,000.

For fraud, Plaintiff is entitled to recover actual damages and exemplary damages for knowing fraudulent and malicious representations, along with attorneys' fees, interest, and court costs. Plaintiff seeks monetary relief over $1,000,000.

For breach of the Texas Deceptive Trade Practices Act, Plaintiff is entitled to recover from Defendants actual damages, statutory damages, exemplary damages, along with attorneys' fees. Plaintiff seeks monetary relief over $1,000,000.

## VII.    ATTORNEYS' FEES

For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.   Plaintiff seeks monetary relief over $1,000,000.

## VIII.   TEX.R.CIV.P. 28

Pursuant to Rule 28 of the Texas Rules of Civil Procedure, any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may be sued in its assumed or common name for the purpose of enforcing for or against it a substantive right. To the extent Plaintiff has sued an entity in its business, trade, or assumed name, Plaintiff intends to pursue and recover on its substantive rights against the correct legal entity.

## IX.   JURY DEMAND

Plaintiff hereby requests that all causes of action alleged herein be tried before a jury consisting of citizens residing in Wood County, Texas. Plaintiff hereby tenders the appropriate jury fee.

## X.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Gale Farhat prays Defendants be cited to answer and appear and, after final trial, Plaintiff has judgment against the Defendants in an amount in excess of the minimal jurisdiction limits of the Court to reimburse her the cost of repairs of the Farhat Property, diminution in value of the Farhat Property, loss of use, mental anguish, and other consequential damages, punitive or exemplary damages, plus pre-judgment and post-judgment interest at the legal rate until paid, attorneys' fees and costs, costs of Court, and for all other relief, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**AYERS & AYERS**


By:     */s/ Jonathan P. Ayers* _____
        JONATHAN P. AYERS
        State Bar No. 01465900
        4205 Gateway Drive, Suite 100
        Colleyville, Texas 76034
        jayers@ayersfirm.com
        (817) 267-9009
        (817) 318-0663 (FAX)

        **ATTORNEYS FOR PLAINTIFF**